UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOWER GOLDENBERG,<br><br>             Plaintiff,<br><br>v.<br><br>SG AMERICAS, INC. dba SOCIETE GENERALE AMERICAS; and SG AMERICAS SECURITIES, LLC,<br><br>             Defendants. | Case No. 1:16-cv-6390<br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY [ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)]** |

## INTRODUCTION

1.  Plaintiff Flower Goldenberg is the widow of C. Martin Goldenberg, who was employed as a Director and Senior Legal Counsel by defendants SG Americas, Inc. dba Societe Generale Americas and SG Americas Securities, LLC (collectively, "Societe Generale").

2.  As an employee of Societe Generale, Martin was entitled to coverage under the company's group life insurance plan. When Martin enrolled for benefits under the Societe Generale plan for 2015, his enrollment summary stated that he was entitled to a life insurance benefit of $480,000, which was based on two times the amount of his annual salary. Relying on this representation, Martin and Flower decided not to purchase any supplemental life insurance coverage from Societe Generale.

3.  After Martin passed away on March 27, 2015, Flower made a claim as Martin's beneficiary for the death benefit owed under the Societe Generale policy and was shocked to learn that the policy benefit was only half of the amount indicated in the enrollment summary. She now brings this action against Societe Generale, the plan administrator, under the Employee Retirement Income Security Act of 1974 ("ERISA") for equitable relief arising out of Societe Generale's misrepresentation of the amount of Martin's life insurance benefit.

**FACTUAL BACKGROUND**

A.     **MARTIN'S EMPLOYMENT HISTORY AND BENEFIT ENROLLMENT**

4.     From 2008 through 2014, Martin was employed as Director, Senior Counsel by Newedge USA, LLC, a brokerage formed by the merger of Martin's former company, Fimat USA, LLC, with Calyon Financial. On January 2, 2015, Newedge merged with and into SG Americas Securities, LLC.

5.     With the merger, Martin officially became an employee of Societe Generale on January 1, 2015, with an annual base salary of $240,000. As a full-time employee of Societe Generale, Martin was eligible to participate in the company's employee benefit plan.

6.     On October 24, 2014, in preparation for the transition to Societe Generale, Martin received a copy of the "Open Enrollment 2015" benefits presentation prepared by Societe Generale. A copy of the presentation is attached as Exhibit A. On slide 8 of the presentation, titled "What Else Has Changed?," the employee life insurance benefit is shown to have been reduced from $1million to "2x Base Salary to a maximum of $750K." On slide 20 of the presentation, titled "Life and AD&D Insurance Details", the employee benefit for Basic Life Insurance is shown to be "2x annual SALARY up to $750K[.]" The presentation does not include any mention of a reduction in the basic life insurance benefit based on the employee's age.

7.     On the same day, Martin also received a copy of the Benefits Open Enrollment booklet, which includes a summary of the employee life insurance benefit on page 8. The booklet states that employees "receive basic life insurance coverage equal to two times their annual base salary, up to a maximum of $750,000." At the end of the page, there is a footnote in smaller type stating that "[t]here is a reduction in the amount of insurance coverage after you reach age 64." However, the brochure contains no information regarding the amount of any such reduction.

8.     On November 10, 2014, Martin completed his benefits enrollment for 2015. His enrollment summary listed the amount of his basic life insurance coverage as "Salary X 2 :

$480,000[.]" A copy of the enrollment summary is attached as Exhibit B. The enrollment summary does not mention any reduction in that benefit.

9. Furthermore, Martin's bi-weekly earnings statements for 2015 show that the taxable cost of the group-term life insurance coverage he was receiving from Societe Generale was $408.86 per two-week pay period or $885.86 per month. Pursuant to IRS Publication 15-B (Employer's Tax Guide to Fringe Benefits – 2015), an employer must include in an employee's wages the cost of the employee's group-term life insurance beyond the first $50,000 of coverage. According to the table contained in Publication 15-B, the amount required to be included as wages for employees 70 or older in 2015 was $2.06/month per $1,000 in additional coverage. Based on the $885.86/month cost reported to the IRS by Societe Generale, Martin was receiving exactly $480,000 in life insurance coverage ($430,000 of which was reported as wages) (885.86 ÷ 2.06 = 430).

10. Believing that Martin's life insurance benefit was $480,000, Martin and Flower chose not to purchase any supplemental life insurance coverage from Societe Generale.

**B.  FLOWER'S LIFE INSURANCE CLAIM**

11. On February 2, 2015, Martin was forced to go on short term disability leave because he was hospitalized to receive treatment for cancer. Martin passed away on March 27, at the age of 73.

12. On April 9, Martin's son, Aaron Goldenberg ("Aaron"), received a claim form for Martin's life insurance benefit. The form, which had been partially completed by Nicole Koskinen, a Benefits Administrator for Societe Generale, indicated a benefit amount of $480,000. Aaron and Flower completed the claim form and submitted it to Voya, the life insurance company for Societe Generale's employee benefit plan.

13. On May 14, Flower received a check from Voya for $240,000, plus nominal interest, which is half of the amount that was promised by Societe Generale.

14. On May 15, Aaron followed up with Ms. Koskinen to find out why Flower had not received the promised benefit of $480,000 from Voya. Ms. Koskinen expressed similar

confusion as to why the benefit had been reduced, and said that she also believed the payment amount to be incorrect.

15. On May 18, Ms. Koskinen informed Aaron that the life insurance benefit for Societe Generale employees is reduced by 50% beginning at age 70 and that Martin's benefit was reduced because he was 73 at the time of his death. Ms. Koskinen admitted that "she tend[s] to forget about age reduction."

16. Aaron explained to Ms. Koskinen that Martin never received any notice of the reduction in benefits and sent her a copy of Martin's benefits enrollment summary for 2015 which specifically showed a benefit amount of $480,000.

17. In response, on June 1, Ms. Koskinen sent Aaron a copy of a document summarizing Societe Generale's employee life insurance plan. This document included a schedule of benefits showing the age-based reduction, but there is no evidence that Martin ever received a copy of this document before completing his benefit enrollment for his new position at Societe Generale.

18. According to the document provided by Ms. Koskinen on June 1, and his cancer diagnosis notwithstanding, Martin was entitled to purchase up to $240,000 worth of supplemental life insurance without providing evidence of insurability.

19. Later that day, Kaye Downey, Societe Generale's benefits manager, advised Aaron that Flower's claim for benefits was paid correctly and that the enrollment materials provided to Societe Generale employees "clearly and concisely state all benefits available through Societe Generale." She did not explain why Martin's benefits enrollment summary listed a life insurance benefit of $480,000 with no mention of any age-based reduction.

C.  **DEMAND TO SOCIETE GENERALE**

20. On June 7, 2016, Flower's attorneys sent a letter to Societe Generale's general counsel setting forth all of the aforementioned misrepresentations made by Societe Generale regarding Martin's life insurance benefits, and demanding compensation for the harm caused by these misrepresentations.

21. On July 14, 2016, Gary Prish, Director and Counsel for Societe Generale, sent a response letter to Flower's attorneys. In that letter, he denied that Martin could have reasonably relied on or been misled by Societe Generale's misrepresentations and he denied that Societe Generale had any fiduciary duty to Martin with regard to the Societe Generale employee benefit plan.

22. Mr. Prish also made the erroneous assertion that Martin would not have been eligible to purchase supplemental life insurance coverage due to his cancer diagnosis. In fact, under the terms of the group life insurance plan, Martin was eligible to purchase up to $240,000 in supplemental life insurance coverage.

23. On July 19, 2016, Flower's attorneys sent Mr. Prish a second letter pointing out, among other things, that he had not addressed several of the misrepresentations made by Societe Generale, including the benefit enrollment summary that showed a life insurance benefit of $480,000, and the representation made by Societe General to the IRS that Martin was receiving $480,000 in life insurance coverage.

24. On July 29, 2016, Mr. Prish spoke to one of Flower's attorneys, Christopher Wimmer, regarding her claim. During the conversation, Mr. Prish admitted he did not understand the issue of Societe Generale's reporting of Martin's life insurance benefit to the IRS. He also reiterated the position that Societe Generale was not a fiduciary to the plan, and refused to identify any possible fiduciaries other than Voya.

**D.     PARTIES, JURISDICTION, AND VENUE**

25. On information and belief, defendant SG Americas, Inc. is a Delaware corporation with its principal place of business in New York, New York.

26. On information and belief, defendant SG Americas Securities, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

27. On information and belief, Societe Generale is the plan sponsor, plan administrator and named fiduciary of an employee benefit plan established for its employees.

28. Plaintiff Flower Goldenberg resides in Greenwich, Connecticut. Flower is the

beneficiary of C. Martin Goldenberg, a former employee of Societe Generale and a participant in the employee benefit plan administered by Societe Generale until his death on March 27, 2015.

29. This court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which grants district courts of the United States exclusive jurisdiction of civil actions brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

30. Pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), this court is the proper venue for plaintiff's claims and has personal jurisdiction over Societe Generale because Societe Generale resides in this district.

## FIRST CAUSE OF ACTION

### ERISA § 502(a)(3)

### (Breach of Fiduciary Duty – Surcharge)

31. Plaintiff incorporates by reference paragraphs 1 through 24 above.

32. Societe Generale is a fiduciary with respect to the employee benefit plan that it established and maintained for its employees because it exercised discretionary authority and discretionary responsibility in the administration of the plan. Specifically, Societe Generale exercised discretionary authority and discretionary responsibility in communicating information about plan benefits to the participants, including Martin.

33. As fiduciary, Societe Generale was obligated to discharge its duties with respect to the plan solely in the interests of the participants and their beneficiaries and with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use in the conduct of an enterprise of a like character and with like aims.

34. Societe Generale breached its fiduciary duty by materially misrepresenting the amount of Martin's life insurance benefit in the following ways:

    a. Societe Generale prepared an "Open Enrollment 2015" benefits presentation which was delivered to Martin on October 24, 2014. The presentation stated that the basic life insurance benefit for Societe Generale employees was two times the

employee's annual salary and did not mention any reduction of the benefit on the basis of age.

b. When completing his benefit enrollment on November 10, 2014 through the enrollment website set up by Societe Generale, Martin was informed that his basic life insurance benefit was "Salary X 2 : $480,000[.]"  Martin's enrollment summary does not mention any reduction of that benefit.

c. Societe Generale reported to the IRS that Martin's taxable group-term life insurance benefit provided $480,000 in coverage.

35. Societe Generale also breached its fiduciary duty by failing to provide Martin with any documents containing the complete schedule of benefits and reductions for the basic life insurance coverage provided to Societe Generale employees.

36. Martin and Flower relied on Societe Generale's material misrepresentations and omissions regarding Martin's life insurance benefit to their detriment.  Martin was 72 years old at the time the misrepresentations and omissions were made, and he had recently been diagnosed with cancer on June 12, 2014.  Had he and Flower known that his life insurance benefit was only $240,000, they would have purchased at least $240,000 in supplemental life insurance coverage.

37. When Flower brought the misrepresentations to Societe Generale's attention, the company, rather than take responsibility for its mistakes, denied that it had any fiduciary duty towards Flower and Martin with regard to the Societe Generale employee benefit plan.

38. Flower, as Martin's beneficiary, has been injured as a direct and proximate result of Societe Generale's misrepresentations and omissions because she did not receive the full $480,000 life insurance benefit expected by Martin and promised by Societe Generale.

39. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Flower is entitled to all appropriate equitable relief to redress Societe Generale's breach of fiduciary duty, including monetary damages of at least $240,000 as a surcharge remedy.

40. Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Flower is also entitled to an award of reasonable attorneys' fees and costs of action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for:

    A.    Monetary damages totaling at least $240,000;

    B.    Her reasonable attorneys' fees and costs of suit;

    C.    Pre- and post-judgment interest; and

    D.    Such other relief as this court deems just and proper.

Dated: August 11, 2016        Respectfully submitted,

By:    s/ Peter Roldan
          Peter Roldan

EMERGENT, PC
25 Broadway, 9th Floor
New York, NY 10004
Email: peter@emergent.law
Phone: (415) 894-9284
Fax: (415) 276-8929

Attorneys for Plaintiff Flower Goldenberg