```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   FLOWERS GOLDENBERG,

 4                  Plaintiff,

 5              v.                        16 Civ. 6390 (AKH)

 6   SG AMERICAS, INC., et al.,
                                         Argument
 7                  Defendants.

 8   ------------------------------x

 9                                       New York, N.Y.
                                         January 30, 2017
10                                       11:20 a.m.

11   Before:

12          HON. ALVIN K. HELLERSTEIN

13                                       District Judge

14

15

16

17          APPEARANCES

18

19   EMERGENT, P.C.
          Attorneys for Plaintiff
20   BY:  PETER ROLDAN

21

     MAYER BROWN LLP
22        Attorneys for Defendants
     BY:  NANCY G. ROSS
23

24

25
```

1          (Case called)

2          THE COURT:  The case is Goldenberg v. SG Americas,

3    Inc.  We have Peter Roldan for the plaintiff.

4          MR. ROLDAN:  Good morning, your Honor.

5          THE COURT:  Good morning, Mr. Roldan.

6          And we have Nancy Ross on behalf of the defense.  Good

7    morning, Ms. Ross.

8          MS. ROSS:  Good morning, your Honor.

9          THE COURT:  It's a motion by Ms. Ross, so let's hear

10   from her.

11         MS. ROSS:  Thank you, your Honor.  Thank you very much

12   for your time this morning.  Your Honor, this is an

13   exceptionally unfortunate situation that brings us here this

14   morning.  I would like to express my sincere condolences to

15   Mrs. Goldenberg and her son.  Unfortunately, your Honor, this

16   is not an actionable situation.

17         THE COURT:  Is it something that happened this

18   morning?

19         MS. ROSS:  Her husband died.

20         THE COURT:  I'm sorry to hear that.

21         MS. ROSS:  That's why we are here.

22         THE COURT:  It's the case?

23         MS. ROSS:  Correct.

24         THE COURT:  I'm sorry.

25         MS. ROSS:  I'm sorry if I confused the Court.

1       THE COURT:  I thought something else had happened

2  aside from what I learned in the case.

3       MS. ROSS:  No.

4       THE COURT:  Please continue.

5       MS. ROSS:  Not that I am aware of, your Honor.  But it

6  is an unfortunate set of circumstances, so I did want to

7  express that.  But it doesn't rise to the level of an

8  actionable lawsuit against Societe Generale or the defendants

9  named in the case.

10       This is a claim, your Honor, where Mrs. Goldenberg's

11  husband was a lawyer in the law department of Societe Generale.

12  He had previously been with a company by the name of Newedge.

13  Newedge merged with Societe Generale and Mr. Goldenberg became

14  an employee, a lawyer, of Societe Generale, beginning in

15  January of 2015.

16       Prior to joining the company, Societe Generale

17  notified the prospective employees of the benefits that they

18  would be entitled to.  In October of 2014, as is typically the

19  case, that was the open enrollment period for all benefits that

20  these new employees would be entitled to.  During that open

21  enrollment period Societe Generale passed out certain

22  information about the benefits.  I'll get back to that in a

23  minute.

24       Thereafter, as I said, Mr. Goldenberg, started with

25  the company of January 2015.  Very sadly, Mr. Goldenberg had

1    been diagnosed with cancer in June of 2014, before the open

2    enrollment period and before he became a Societe Generale

3    employee.  After he started with Societe Generale, in March of

4    2015 Mr. Goldenberg went on disability for treatment for his

5    cancer.  He subsequently passed away after that.  So he was

6    with Societe Generale for a very short time period.

7         The focus of this lawsuit is on the life insurance

8    benefit to at which Mr. Goldenberg was entitled to and enrolled

9    for.

10        The problem with the plaintiff's case, your Honor, is

11   that it misses on all the required elements for it to be an

12   actionable cause of action.  It fails to show that Societe

13   Generale had any fiduciary role or fiduciary obligations here.

14   It fails to show that under the law of the Second Circuit there

15   was any breach of any fiduciary duties here.

16        THE COURT:  Even if there was a fiduciary

17   responsibility, there was no breach?

18        MS. ROSS:  Correct, your Honor.  I'm going to go

19   through each of those for the Court.

20        Thirdly, nothing that is pled in this complaint rises

21   to the punitive level for the narrow surcharge remedy that the

22   Supreme Court recently recognized, albeit some courts viewed it

23   as dicta.  But I'm sure this Court is well aware of the CIGNA

24   v. Amara lawsuit in which the Court described the types of

25   equitable relief that could be available in certain

1  circumstances, including surcharge.  The Amara case was, by all

2  accounts and all recognitions of all the courts, a case of

3  intentional misrepresentation, frankly, of deceit.

4    Let me walk through the categories that I have pointed

5  to here.  First of all, with respect to whether Societe

6  Generale constituted a fiduciary for purposes of breaching any

7  fiduciary duties, the complaint is void of any allegations that

8  point in any way, shape, or form to the discretion or control

9  that is the sine qua non of fiduciary status.

10    Your Honor, if I point the Court to the complaint,

11  there are only two places where the plaintiff pleads the

12  fiduciary duty status of the defendants.  The first is in

13  paragraph 27, where the complaint reads, "On information and

14  belief, Societe Generale is the plan sponsor, plan

15  administrator, and named fiduciary of an employee benefit plan

16  established for its employees."

17    The second reference with respect to defendants'

18  having any fiduciary status is in paragraph 32 of the

19  complaint.  It is two sentences.  Unless the Court would like,

20  I'm not going to read the entire paragraph into the record

21    THE COURT:  I have it in front of me.

22    MS. ROSS:  Thank you.  You will notice that it says,

23  "Specifically, Societe Generale exercised discretionary

24  authority and discretionary responsibility in communicating

25  information about plan benefits to the participants, including

1    Martin."  That is the sum and substance of any allegation in

2    the complaint attempting to point to the defendants is a

3    fiduciary.

4           Your Honor, we submitted to the Court, as the law

5    allows us to do, the plan document.  That is in the record at

6    joint appendix 1.  Reading that plan document, it is evident

7    that Societe Generale has no role whatsoever in deciding

8    whether benefits are permissible.  The only role of Societe

9    Generale throughout this entire document is that it is the

10   policyholder.

11          THE COURT:  What about communicating information?

12          MS. ROSS:  Pardon me?

13          THE COURT:  What about communicating information?

14          MS. ROSS:  Yes, your Honor.  The laws recognize that

15   communicating with plan participants may be a fiduciary act.

16   However, in all of the cases that the plaintiffs rely on, and

17   as the defendants have shown the Court, the communicator was in

18   a position more than simply being the employer.  In the D'Iorio

19   case the defendant was the plan administrator.  There were two

20   cases, one is motion to dismiss, one is summary judgment.  That

21   is the leading case that the plaintiffs rely on to say that

22   communicating with plan participants may be a fiduciary act.

23          But certainly that proposition does not go so broad to

24   say that any time an employer who has no other role with

25   respect to a benefit plan opens its mouth or attempts to talk

1    to an employee about benefits, that that right qualifies that

2    person as a fiduciary.

3           Your Honor, I'm going to switch to the issue of the

4    breach that is alleged here.

5           THE COURT:  Let's stay with D'Iorio.  "Courts in this

6    circuit have held that discussing future benefits with

7    potential employees can give rise to fiduciary duties under

8    ERISA."  Plaintiff pleads under that case.  Am I not required

9    to accept that as if proved?

10           MS. ROSS:  Not at all, your Honor.  If the Court looks

11   at the circumstances of that case, there is no dispute that the

12   defendant that is being sued was not only the employer but was

13   also the plan administrator.

14           THE COURT:  But that is not the touchstone decision.

15   That may have been one of the facts in the case.  Here the

16   court continues, "There is no dispute that the PowerPoint

17   presentation given at the December 1, 2008, meeting was

18   intended to provide information to the defendant's employees

19   about its future benefits."  That's just what happened here.

20           MS. ROSS:  In that situation, your Honor, when the

21   defendant in D'Iorio was presenting and explaining the

22   information, they were also wearing the hat as the plan

23   administrator of the plan.  That is not the case here.

24           THE COURT:  They are not sued as an administrator.

25   They are sued as a fiduciary, and they are giving information.

1    I can't see a distinction at the pleading stage.  I hold that

2    Societe Generale was a fiduciary as required by D'Iorio v.

3    Winebow, Inc., 68 F.Supp.3d 334 (E.D.N.Y. 2014).  That is the

4    Spatt decision.  That's not a Second Circuit decision.  That is

5    a district court decision.

6            MS. ROSS:  The case settled before it was tried.

7            THE COURT:  I think Judge Spatt got it right, and I

8    follow him.

9            MS. ROSS:  I would like to draw the Court's attention

10   to Judge Spatt's recognition that on 68 F.Supp.3d 334 the court

11   notes, "The defendant is the plan administrator and named

12   fiduciary of its LTD plan."  That is not the situation here,

13   your Honor.

14           THE COURT:  Clearly, Societe Generale is not named is

15   a fiduciary.

16           MS. ROSS:  Correct.

17           THE COURT:  It was a sponsor.  Whether it was an

18   administrator really doesn't make a difference.  Judge Spatt

19   was following Devlin v. Empire Blue Cross & Blue Shield, 274

20   F.3d 76, 89 (2d Cir. 2001).  "Where the Court of Appeals held

21   that where an employer communicates with plan beneficiaries

22   about the contents of the plan, an employer is acting in the

23   fiduciary capacity for ERISA purposes, where reasonable

24   employees could have thought that the employer was

25   communicating with them both as employer and as plan

1    administrator."

2    I don't think it is required that they be both

3    employer an administrator, as long as there is a position of

4    responsibility that can make out a fiduciary.  I so hold

5    MS. ROSS:  Your Honor, with all due respect, under the

6    plausibility standards of Twombly and Iqbal, I do believe that

7    the plaintiff has more of a duty to show in the complaint, on

8    the face of the complaint, that Societe Generale was exercising

9    that discretion and control in discussing the benefits.  This

10   complaint is completely void of any mention of who was talking,

11   what position the person was in.

12   In fact, the way the plaintiff has written this is

13   somewhat in the passive voice.  In paragraph 6 the plaintiff

14   states that "On October 24, 2014, in preparation for the

15   transition to Societe Generale, Martin received a copy of the

16   open enrollment 2015 booklet prepared by Societe Generale."  It

17   doesn't say who prepared that, what position they were acting

18   in, who was overseeing it.

19   With all due respect, I believe that this complaint is

20   utterly void of any explanation is to how Societe Generale

21   could have been acting in a fiduciary capacity.

22   THE COURT:  I think it is adequately pled on paragraph

23   6.  I hold Iqbal is satisfied.

24   MS. ROSS:  I'm sorry, your Honor?  I didn't hear.

25   THE COURT:  I hold that Iqbal is satisfied.  Paragraph

1   6 states the way that the information was presented to new

2   employees in connection with the acquisition of the company by

3   Societe Generale.  Not sufficient.  Let's go to breach.

4           MS. ROSS:  All right, let's go to the breach.  Your

5   Honor, right below paragraph 6, in paragraph 7, the plaintiff

6   admits that on the same day, and that is the same day as the

7   presentation, Martin also received a copy of the benefits open

8   enrollment booklet, which includes a summary of the employee

9   life insurance benefit on paragraph 8.  In paragraph 7

10  plaintiff admits -- at the end of the page there is a footnote

11  in smaller type stating, "There is a reduction in the amount of

12  insurance coverage after you reach age 64."

13          Your Honor, we submitted that benefits enrollment

14  booklet which was given to Mr. Goldenberg at the same time as

15  the presentation.  That booklet is at JA-58, your Honor.  The

16  operative page, the relevant page of that booklet is at JA-65.

17  I brought the Court's attention to it because the first

18  paragraph talks about the amount of the basic life insurance.

19  It then has an asterisk.  That asterisk takes you where you

20  would commonly look, to the bottom of the page, where it's set

21  aside from the rest of the text.  It says, asterisk "There is a

22  reduction in the amount of insurance" --

23          THE COURT:  Hold on.  I'm looking at page 65 of 82,

24  JA-62.  Am I on the right page?

25          MS. ROSS:  JA-65, your Honor.

 1          THE COURT:  Page 68 of 82.  Okay.

 2          MS. ROSS:  Page 65.

 3          THE COURT:  I see it.

 4          MS. ROSS:  Therein lies the dispute in the case.

 5   Plaintiff admits that Mr. Goldenberg had this document at the

 6   same time he had the presentation.  Unfortunately, Mr.

 7   Goldenberg just didn't read it as carefully as he should have.

 8   On the first page of that document, your Honor, at JA-59, the

 9   very opening says, "We encourage you to carefully read this

10   guide to understand your options.  You should pay close

11   attention to what's different for the new year and be sure to

12   select the best possible options for your needs and the needs

13   of your family."

14          THE COURT:  Could the plaintiff have purchased

15   supplementary insurance?

16          MS. ROSS:  That is not in evidence, your Honor, so I

17   don't know the answer to that.

18          THE COURT:  It is alleged that he could: that had he

19   not been misled, he alleges he could have bought supplementary

20   insurance.  Have you looked into that?

21          MS. ROSS:  We have not looked into that, your Honor.

22          THE COURT:  The value here was that he may not have

23   been able to buy insurance because he had an underlying

24   cancerous condition, am I right?  He knew he had cancer as of

25   June of 2014?

1          MS. ROSS:  Correct.

2          THE COURT:  This takes place several months later.

3          MS. ROSS:  Correct.

4          THE COURT:  If at the time of October 2014 he is

5    looking to buy life insurance, he may not be able to purchase

6    it because of his underlying cancer.

7          MS. ROSS:  That would certainly be something that we

8    would explore on summary judgment, your Honor.  Right now we

9    are just dealing with --

10          THE COURT:  I understand that.

11          MR. ROLDAN:  Your Honor, if I may?

12          THE COURT:  I'll get to you.

13          What I'm looking at is this.  As an acquired employee,

14    he presumably was eligible for the insurance that Societe

15    Generale was giving him without having to undergo any medical

16    examinations.  He was entitled, whatever his medical condition,

17    am I right?

18          MS. ROSS:  Yes, I believe that's correct.

19          THE COURT:  It was either this policy or nothing.

20    This supports your argument that there was no breach, that as a

21    lawyer he knew that this qualification occurred.  He may not

22    have known the full implication from this footnote, but you

23    would argue he was on a duty to inquire.

24          MS. ROSS:  Yes, that's correct, your Honor.  The other

25    thing, your Honor, is at the time of this he was over 70.  If

1   he would have looked at the materials that had been passed

2   out -- it is not asking much for a participant to read the

3   materials they received.

4           THE COURT:  What other materials were passed out?

5           MS. ROSS:  At this time, your Honor, it was the

6   PowerPoint presentation and this benefits open enrollment

7   booklet.  Those are the two documents that he received when he

8   was enrolling.  Subsequently, we believe that he would have

9   received the summary plan description.  That is not yet in the

10  record.

11          The plaintiffs changed their position on that because

12  while their complaint, which is of course the only thing the

13  Court can go on, says that there is no evidence in its

14  paragraph 17 with respect to the summary plan description, it

15  says there is no evidence that Martin ever received a copy of

16  this document before completing his benefit enrollment for his

17  new position at Societe Generale.  However, in their opposition

18  brief to the summary judgment, they stated more emphatically

19  that he never received the summary plan description.  Your

20  Honor, obviously you can't amend your complaint through your

21  brief.

22          Your Honor, if I may.

23          THE COURT:  I'm reading this allegation.  "Plaintiff

24  alleges that Ms. Koskinen sent the plaintiff a copy of the

25  summary plan document which showed benefits modified by

1    age-based reduction." Then he added, "There is no evidence

2    that the plaintiff ever received a copy of this document before

3    completing his benefit enrollment." That is a rather cute way

4    of pleading. Either he knew it or he didn't know it. He can't

5    talk about the evidence here.

6            Thank you. Anything else you want to tell me?

7            MS. ROSS: Yes. I'm sure your Honor is aware of the

8    circumstances that the Second Circuit and the courts have

9    recognized where informal communication may rise to the level

10   of constituting a breach. The courts in the Devlin case laid

11   out certain circumstances as well as in the <u>Bilello v.</u>

12   <u>JPMorgan</u>, requiring that the speaker know that the statement

13   was false or not grounded in fact.

14           The times where the court has found a communication to

15   be actionable are in four different circumstances. The first

16   two involve the participant actually inquiring about their

17   benefits and being misled.

18           THE COURT: What can you tell me about the circum-

19   stances of this dissemination of information on which plaintiff

20   relies?

21           MS. ROSS: The plaintiff received the presentation as

22   well as the open enrollment booklet that we just looked at

23   before enrolling in his life insurance. He did not inquire.

24   There is no evidence that he ever picked up the phone, asked

25   about further life insurance. Your Honor, this was a gentleman

1   who unfortunately had cancer and who also was over the age of

2   70.

3              THE COURT:  We have the display, the PowerPoint

4   display, do we not?

5              MS. ROSS:  Right.  The PowerPoint display was targeted

6   to be an overall description of all of the benefits.  That

7   PowerPoint display begins at JA-30.  It covers all of the

8   benefits.  It certainly does not go into detail on the nuances

9   of every single circumstance, nor are you required to as a

10  fiduciary.

11             THE COURT:  This is a summary.

12             MS. ROSS:  This is a summary.  This is the PowerPoint

13  that was provided.  It talks about medical, dental --

14             THE COURT:  Point me to the page that carries the

15  misleading statement.

16             MS. ROSS:  Your Honor, there was no misleading

17  statement.

18             THE COURT:  Plaintiff's allegation.

19             MS. ROSS:  The page that covers life insurance is on

20  JA-49.  It covers all of the primary points of coverage.  It

21  was not intended, nor would it ever have been reasonable, to

22  cover all of the nuances.  The participants, the employees, all

23  received that open enrollment booklet at the very same time for

24  the purpose of providing them with the other terms and

25  conditions of the benefit programs.

1            Your Honor, this clearly does not rise to the level of

2    being an affirmative misrepresentation.  The essence of the

3    plaintiff's claim is because Societe Generale does not state

4    every single term and condition of life insurance in a general

5    PowerPoint presentation that was targeted and geared towards

6    all of the employees, that they breached their fiduciary

7    duties.  Your Honor, that is just not how the law works.

8            THE COURT:  The way it works is that when an employee

9    reaches 64, there is a downward adjustment in his insurance?

10           MS. ROSS:  That's correct, your Honor.

11           THE COURT:  If he dies before then, his benefit is

12   twice his salary.

13           MS. ROSS:  Correct.

14           THE COURT:  Up to $750,000.  If he dies after that,

15   there is a downward adjustment because of age.

16           MS. ROSS:  Correct.

17           THE COURT:  Do you have anything else to tell me aside

18   from breach?  I got your argument that Societe Generale was not

19   a fiduciary, your argument that there was no breach.  Anything

20   else you want to tell me?

21           MS. ROSS:  Your Honor, I would just remind the Court

22   that this certainly is not the circumstance where courts have

23   recognized that a surcharge remedy --

24           THE COURT:  I agree.

25           MS. ROSS:  Thank you, your Honor.

```
 1                THE COURT:  Thank you.

 2                Mr. Roldan.

 3                MR. ROLDAN:  Good morning, your Honor.  I'll address

 4   the issue of misrepresentation and breach of fiduciary duty

 5   since you already held that the breach of fiduciary duty

 6   already existed.

 7                THE COURT:  I'm sorry.  What did you say?

 8                MR. ROLDAN:  You have already held that there was a

 9   fiduciary duty.

10                THE COURT:  Right.

11                MR. ROLDAN:  On the part of Societe Generale.

12                THE COURT:  Right.

13                MR. ROLDAN:  So I am only going to address the issue

14   of breach of fiduciary duty.

15                The focus of defendants' argument, your Honor, was on

16   this booklet, the booklet provided, as well as the PowerPoint

17   presentation.  The booklet, we admit that it does state that

18   there is a reduction in age benefits, but it doesn't go into

19   any detail.  The PowerPoint presentation notably doesn't make

20   any mention of that reduction; it only states the amount of the

21   benefit.  If you look at JA-49, there is no mention of that.

22                And there is no mention at all of the enrollment

23   summary that Martin received after he made his benefit

24   selection.  That is Exhibit B to the complaint.  I'm afraid I

25   don't actually know what the joint appendix page is.  If you
```

1  look at that enrollment summary.

2          THE COURT:  JA-74.

3          MR. ROLDAN:  JA-74 states unequivocally that Martin

4  had a benefit of $480,000.  There is no mention of that

5  reduction.  This was the last thing that Martin saw before

6  making his enrollment selections.

7          THE COURT:  Take me through that.

8          MR. ROLDAN:  If you look at the summary, it summarizes

9  all of the different benefits that Martin will be receiving

10  upon his enrollment --

11          THE COURT:  Is that page JA-75?

12          MR. ROLDAN:  That's right.  One of the categories is

13  life insurance.  Next to that it will say that the amount of

14  benefit is two times salary, $480,000.  There is nothing on

15  that page which suggests that there is any kind of reduction of

16  that benefit.  That is clearly a misrepresentation, your Honor.

17  I don't see any other way you can categorize that.  Societe

18  Generale is saying under the terms of the plan he only had

19  $240,000 in benefits.  That clearly contradicts that.

20          When you combine that with the PowerPoint

21  presentation, that doesn't make any --

22          THE COURT:  Is the standard subjective or objective?

23          MR. ROLDAN:  It is going to be subjective, your Honor.

24          THE COURT:  If the applicant thought one way or

25  another even though a reasonable person would have thought the

1    other way, that is sufficient to defeat a motion to dismiss?

2            MR. ROLDAN:  I think so, your Honor.

3            THE COURT:  It can't be.

4            MR. ROLDAN:  The applicant was misled and had relied

5    on that statement.  I think he can reasonably rely on the

6    representations made by Societe Generale in that enrollment

7    summary.  I don't see why he wouldn't be entitled to rely on

8    that.  This is information provided to him directly by the plan

9    sponsor or the administrator.

10           One of the things we just don't know the details of is

11   who prepared that enrollment summary.

12           THE COURT:  What's the difference?

13           MR. ROLDAN:  The difference is that we might need to

14   name a new party if there was actually a third party who made

15   that misrepresentation.

16           THE COURT:  It is clearly the employer or someone

17   acting for the employer, right?

18           MR. ROLDAN:  Yes.

19           THE COURT:  The employer is the sponsor, and you are

20   claiming he is also the fiduciary.

21           MR. ROLDAN:  Yes.  As you pointed out, your Honor, the

22   title of the --

23           THE COURT:  What else do you need to know?

24           MR. ROLDAN:  One of the issues brought up was whether

25   Societe Generale knew that this was false information.  We

1    don't know what the thought was behind preparing that

2    enrollment summary.

3           We also would like to point out --

4           THE COURT:  A summary, by definition, does not have

5    everything in it.

6           MR. ROLDAN:  No, your Honor.  It is a summary.  At the

7    same time, it is misleading.  It directly contradicts the terms

8    of the plan.

9           THE COURT:  It doesn't.  It doesn't have a

10   qualification.  You are arguing that the absence of the

11   qualification makes it misleading.

12          MR. ROLDAN:  That's right.

13          THE COURT:  Because any reasonable person hearing this

14   would believe that it is an absolute statement, not a qualified

15   statement.

16          MR. ROLDAN:  Yes.  If you look at the enrollment

17   summary --

18          THE COURT:  But that person has another booklet going

19   along with it, and that person is a lawyer, and the lawyer is

20   trained to look at things, not just take surface items.  The

21   lawyer would be on notice that it is not an absolute statement,

22   it is a qualified statement.  I would have to look and see what

23   the qualification is, particularly if the lawyer already has

24   cancer and it is doubtful that he can get other insurance.

25          MR. ROLDAN:  Your Honor, even if Martin had tried to

1   make an inquiry, we have been told by Societe Generale in their

2   motion that they had no duty to actually provide him with a

3   summary plan document.  He didn't actually receive any of this

4   information until after he was already enrolled.  If that is

5   the case, even if he had tried -- we are not going to know now.

6          THE COURT:  Someone who is going to enroll in a plan

7   has to know what he is enrolling in.  That is the purpose of

8   this meeting, to inform the employees what they are getting.

9          MR. ROLDAN:  He received material that said he would

10  be getting $480,000 in a life insurance benefit.

11         THE COURT:  Subject to qualification at the age of 64.

12         MR. ROLDAN:  There are two communications, including

13  the last one he received, which said it was going to be

14  $480,000.

15         THE COURT:  I think that has to be understood just as

16  a general statement.  At this point it's even more summary than

17  the previous PowerPoint presentation.  When do you allege he

18  received the summary plan description?

19         MR. ROLDAN:  He actually never received it, as far as

20  I know.  It was the son Aaron.

21         THE COURT:  This pleading is too cute for me to

22  believe that.

23         MR. ROLDAN:  Unfortunately, Mr. Goldenberg isn't

24  around to tell us whether he received it or not.

25         THE COURT:  There is evidence that it was sent out on

1    June 1.  June 1 of what date?

2         MR. ROLDAN:  That was 2015.  That was after he had

3    passed away.  It was actually to his son Aaron.  He received

4    that after the claim was denied, and he was trying to find out

5    more about why the claim was denied.  Really the only document

6    that had the full terms of the plan wasn't provided to him.

7    According to Societe Generale, it had no duty to provide it to

8    him until after he had enrolled in the benefits plan, at which

9    point it would have been too late to change any of his

10   selections.

11        THE COURT:  Is there any evidence from the company

12   that they gave the summary plan document to the plaintiff

13   before he enrolled?

14        MR. ROLDAN:  I can't say that for certainty because

15   Martin is no longer with us.

16        THE COURT:  Is there any evidence that you know of?

17        MR. ROLDAN:  No, there is none that I know of.

18        THE COURT:  Ms. Ross?

19        MS. ROSS:  Your Honor, the summary plan description

20   along with all benefits materials is on a web portal that was

21   available to the employees at any time.

22        THE COURT:  But there is no evidence that that

23   information was actually tendered to the applicant?

24        MS. ROSS:  We have developed some information, your

25   Honor, but we certainly didn't present it to the Court with a

1   motion to dismiss.

2           THE COURT:  This is a 12(b)(6) motion?

3           MS. ROSS:  That's correct, your Honor.

4           THE COURT:  There have been no depositions in the

5   case?

6           MS. ROSS:  Right.  Again, your Honor, our position is

7   based upon what is pled on the face of the complaint.  There is

8   no allegation --

9           THE COURT:  I can't take judicial notice about what

10  was or was not on a web page.

11          MS. ROSS:  Right.

12          THE COURT:  The PowerPoint demonstration is alleged,

13  and I can certainly take the complete PowerPoint demonstration.

14  What was the other document that had the footnote?  What is it

15  called?

16          MS. ROSS:  The plan document, your Honor, which is at

17  JA-1.  It is the second page.  That was permissible.  The Court

18  could take that into consideration.  It is at page JA-5.  Your

19  Honor, right at the top of the page --

20          THE COURT:  The Voya financial plan?

21          MS. ROSS:  Correct.

22          THE COURT:  That had this information?

23          MS. ROSS:  Correct.

24          THE COURT:  I am going to take a five-minute recess.

25          (Recess)

1          THE COURT:  I deny defendants' motion to dismiss.  I

2    hold that defendant wasn't acting as a fiduciary in its

3    communication of information to people eventually eligible to

4    be enrolled in the benefits plan.  However, I am not able at

5    this point to rule that there was a breach.

6          The two pieces of information, the PowerPoint

7    presentation and the employee's insurance booklet that was

8    given at the same time, should be read together.  And there was

9    a footnote in the booklet that announced to anyone interested

10   that there would be a reduction in the amount of insurance

11   coverage after the applicant reached age 64.

12         But there was no disclosure of what would be the

13   effect of the adjustment, and the record does not know what

14   information would be available to the applicant if the

15   applicant inquired at that time.  Without that conditional

16   discovery, I cannot make a finding that there was or was not a

17   breach.  It is for that reason that I deny the motion at this

18   time.

19         The motion under rule 12(b)(6) does not allow me to

20   rule on the merits unless the merits are so clear that they

21   rise to a standard that allows me to rule.  Here, there is some

22   murkiness sufficient to cause me to deny the motion.

23         As to the petition to surcharge, there is no level of

24   deceit that rises to the level where a surcharge would be

25   appropriate, and the allegations to recover for that are

1    stricken.

2              There is no need to amend the complaint at this point.

3    You can go ahead with discovery.  I can let you formulate a

4    plan now or schedule a conference after you have had a chance

5    to discuss what you want to do.  Let me schedule a meeting; I

6    think that would be better.  How about March 3rd at 10 o'clock.

7    Have a plan that you agree to and come in with that plan.  If

8    the defendant wants to make another motion based on the

9    discovery, I'll entertain it.

10             March 3, 10 o'clock.  Thank you.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25